UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHAQUETA NYKOKIA SPROAPS,<br><br>Plaintiff,<br><br>v.<br><br>FRANK J. BISIGNANO,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:25-cv-01747-CMS |

**MEMORANDUM AND ORDER**

Before the Court are Plaintiff Chaqueta Nykokia Sproaps' Social Security Complaint and Brief brought pursuant to 42 U.S.C. § 405(g) (Docs. 1, 13). For the reasons stated herein, the Court affirms the decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits.

**BACKGROUND**

**I. Five-Step Analysis Used by the Social Security Commissioner**

When reviewing a claim under 42 U.S.C. § 405(g), the Commissioner applies a five-step sequential test. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Teabeau v. Kijakazi*, No. 4:21-cv-703-NCC, 2022 WL 4598672, at *2 (E.D. Mo. Sep. 30, 2022) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). "The claimant has the burden of proof to show [he] is disabled through step four," with the burden of production shifting to the Commissioner at Step Five. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "The ultimate burden of persuasion to prove disability, however, always remains with the claimant." *Young v. Apfel*, 221 F.3d 1065,1069 n.5 (8th Cir. 2000).

The first step is an evaluation of whether the claimant is engaging in work activity and whether any such work constitutes "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* Second, the Commissioner must examine the evidence to determine whether the claimant suffers from a severe "impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing 20 C.F.R. § 416.920(c)). Third, the Commissioner evaluates the severity of the impairment, and if the impairment crosses a threshold set forth in the regulations, the claimant is disabled. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the impairment is found to be severe but does not meet the threshold required for a presumptive finding of disability in Step Three, the Commissioner assesses the claimant's "residual functional capacity" (RFC) to perform sustained work based on the evidence in the record. *See* Sections 416.920(e), 416.945; *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996) (stating the SSA's policy interpretations regarding the RFC assessment). Following the determination of the claimant's RFC, the Commissioner assesses whether the claimant can perform the requirements of his past relevant work. 20 C.F.R. § 416.920(f). If so, the claimant is not disabled. *Id.*

Finally, at Step Five, the Commissioner determines whether the claimant can make adjustment to other work, given the claimant's RFC, age, education, and work experience. Section 416.920(a)(4)(v). If the claimant can make such adjustment, he is not disabled. *Id.* Further, if a claimant reaches Step Five, the Social Security Administration must meet a limited burden of providing evidence "that other work exists in significant numbers in the national economy that [claimant] can do." Section 416.960(c)(2).

## II. Factual Background

Plaintiff resides in St. Louis County, Missouri. (Doc. 1 at 1). On November 17, 2022, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act. (Doc. 13-1 at 1). Plaintiff suffers from "obesity, cervical and lumbar spine impairments including degenerative disc disease, bilateral carpal tunnel syndrome, diabetes mellitus with diabetic neuropathy, seizures, major depressive disorder, post-traumatic stress disorder (PTSD), sleep apnea, sensorineural hearing loss on the left, tachycardia, left Achilles tendinitis, migraines, COPD/asthma, and hypertension." (Doc. 1 at 2).

The administrative law judge (ALJ) held a hearing on June 20, 2024, and issued a decision on November 21, 2024. (Doc. 8-3 at 15, 33). The ALJ found in Step One that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability and in Step Two that Plaintiff has the severe impairments of "obesity, cervical and lumbar degenerative disc disease, bilateral carpal tunnel syndrome, diabetes mellitus with diabetic neuropathy, seizures, major depressive disorder, and [PTSD] . . . ." *Id.* at 18. In Step Three, the ALJ determined Plaintiff's severe impairments do not meet the threshold for an automatic finding of disability. *Id.* at 19–22.

In Step Four, the ALJ found that Plaintiff has the RFC to "perform sedentary work," except for the following restrictions:

> She can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but can never climb ladders, ropes, and scaffolds. She can frequently handle and finger objects with her bilateral upper extremities. The claimant requires the use of a cane but can lift and carry up to the exertional limitations with the other upper extremity. She can perform work that requires no concentrated exposure to extreme heat, vibration, or pulmonary irritants, such as dusts, gases, fumes, odors. She can perform work with no exposure to hazards, such as unprotected heights. The claimant can work in an environment with not more than a moderate noise [level] as defined in the Selected Characteristics of Occupations (SCO). She can

> perform simple tasks and can perform work with occasional workplace changes that are predictable an[d] introduced gradually.

*Id.* at 22. Finally, in Step Five, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a hotel desk clerk or home attendant based on the vocational expert's testimony that someone with Plaintiff's RFC "would not be able to perform this past relevant work as actually performed by the claimant as generally performed in the regional and national economy." *Id.* at 31. The ALJ found, citing testimony of the vocational expert, that Plaintiff could "perform the requirements of representative occupations" such as a food and beverage order clerk, charge account clerk, or a polisher. *Id.* at 32. The ALJ concluded that, given Plaintiff's RFC, age, education, work experience, and ability to perform other jobs that existed in significant numbers in the national economy, she is not disabled. *Id.* at 32–33.

## III. Procedural Background

Plaintiff filed her Complaint on November 26, 2025. (Doc. 1). Defendant Frank J. Bisignano, Commissioner of the Social Security Administration, filed the Certified Social Security Transcript on January 22, 2026. (Doc. 8). Plaintiff filed her Social Security Brief on April 22, 2026, challenging the ALJ's determination on the bases that she improperly evaluated Plaintiff's testimony, failed to fully develop the record, erred by finding Plaintiff "did not meet or medically equal Listing 1.15,"[1] and improperly rejected opinions of certain state agency medical consultants (SAMCs). (Doc. 13). Defendant filed his Social Security Cross Brief on May 22, 2026. (Doc. 18). Plaintiff filed her Social Security Reply Brief on June 22, 2026. (Doc. 19).

## LEGAL STANDARD

The Court will affirm the decision of an ALJ "'if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole.'" *Kraus v. Saul*, 988 F.3d

[1] Listing 1.15 addresses skeletal spine disorders resulting in nerve root compromise.

1019, 1024 (8th Cir. 2021) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)). In other words, the factual findings of the Commissioner are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405; *see also Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The United States Supreme Court identifies "substantial evidence" as a term of art and directs a court using that standard to identify whether there is "sufficient evidence" in the existing administrative record "to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019).

The standard for substantial evidence is not high. *Id.* at 103. "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Supreme Court further defines "more than a mere scintilla" as meaning only that there must be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotations omitted).

Alleged legal error by the ALJ is reviewed *de novo*. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (citing *Collins*, 648 F.3d at 871) (internal quotations omitted).

Furthermore, while the Court "must consider evidence in the record that fairly detracts from, as well as supports" the agency decision, the Court will not reverse an agency decision "merely because [it] find[s] that substantial evidence exists in the record that would have supported a contrary outcome." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (internal quotations omitted). Instead, the Court "will disturb the [ALJ's] decision only if it falls outside the available zone of choice." *Bonham v. Bisignano*, 177 F.4th 934, 940 (8th Cir. 2026) (internal quotations omitted) (alteration in original).

## DISCUSSION

Plaintiff argues: 1) the ALJ did not properly evaluate Plaintiff's testimony because she "overlooks significant evidence in the record when evaluating Plaintiff's limitations relating to her back pain" and the record contains significant contradictory evidence; 2) the ALJ failed to fully develop the record because the ALJ "relied on the lack of" records documenting many of Plaintiff's 2024 visits; 3) the ALJ erred by finding Plaintiff did not meet or medically equal Listing 1.15 by not considering "that Plaintiff was prescribed a walker . . . ." and "did not discuss probative evidence supporting how much Plaintiff needed or used a walker," and did not "state how Plaintiff's diabetes and diabetic neuropathy affected whether Plaintiff met or equaled Listing 1.15"; and 4) the ALJ improperly rejected a SAMC's opinion because she did not "consult vocational resources to determine the effect" of a stooping limitation. (Doc. 13).

### I. The ALJ Properly Evaluated Plaintiff's Testimony.

Plaintiff argues the ALJ "improperly evaluate[d] Plaintiff's testimony concerning her lumbar impairment, diabetes and neuropathy, and activities of daily living." (Doc. 13 at 3).

First, Plaintiff claims the ALJ overlooked certain evidence related to her backpain. *Id.* at 3–7. Plaintiff argues that the ALJ's finding that Plaintiff's statements are inconsistent is "too generalized and oversimplifies the evidence." *Id.* at 4. Plaintiff argues the ALJ did not discuss certain records after May 2024. *Id.* at 6.

Contrary to Plaintiff's claims, the ALJ properly evaluated Plaintiff's pain testimony and provided adequate reasoning for discrediting Plaintiff's claims. For example, the ALJ noted that, despite Plaintiff's degenerative cervical and lumbar spine conditions and initial failure to improve following surgery, subsequent operations caused improvement in back pain and strength by Plaintiff's own admission. (Doc. 8-3 at 24–27).

Second, Plaintiff argues the ALJ erred when considering Plaintiff's diabetes and diabetic neuropathy. (Doc. 13 at 7–9). But the ALJ specifically acknowledged Plaintiff's testimony about her uncontrolled diabetes. (Doc. 8-3 at 23) ("[T]he claimant specifically testified that condition remains uncontrolled with swings in blood sugar from high to low."). The ALJ also considered Plaintiff's neuropathy and pain, numbness, and tingling. *Id.* at 27. The ALJ acknowledged Plaintiff's testimony and noted that "treatment notes . . . repeatedly indicated that the claimant was in no distress and included normal neurological findings." *Id.*

Finally, Plaintiff argues the ALJ did not consider her minimal activity during her daily life. (Doc. 13 at 9–10). But the ALJ explicitly considered Plaintiff's testimony about lying in bed, needing assistance, and driving. (Doc. 8-3 at 23).

An ALJ's decision is not required "to include a discussion of how every *Polaski* 'factor'[2] relates to the claimant's credibility." *Samons v. Astrue*, 497 F.3d 813, 820 (8th Cir. 2007) (internal citations omitted); *see also Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (stating an ALJ need not explicitly discuss each factor). Accordingly, the ALJ did not err in not fully discussing each factor in detail.

Thus, the ALJ properly considered Plaintiff's subjective complaints and adequately supported her decision regarding inconsistencies. Even if Plaintiff can point to contrary evidence in the record, that evidence does not place the ALJ's assessment beyond the "available zone of choice." *Bonham*, 177 F.4th at 940 (internal quotations omitted). As noted, the ALJ properly observed evidence in the record that she found inconsistent with Plaintiff's complaints. The ALJ

[2] The *Polaski* factors are a claimant's "prior work history; daily activities; duration, frequency and intensity of the pain; dosage, effectiveness and side effects of medications; precipitating and aggravating factors; and functional restrictions." *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)).

explained why she found the evidence inconsistent with Plaintiff's complaints and engaged in lengthy analyses of Plaintiff's complaints. This amounts to substantial evidence to support the ALJ's discounting Plaintiff's subjective complaints.

**II. The ALJ Fairly and Fully Developed the Record.**

Plaintiff argues the ALJ failed to fully develop the record even though "the ALJ bears a responsibility to develop the record fairly and fully . . . ." (Doc. 13 at 11). But the record consisting of over 3,500 pages of medical evidence proves Plaintiff wrong. (Doc. 8). Plaintiff argues "[o]btaining the complete records for Plaintiff's treatment visits and hospitalizations . . . is necessary." *Id.* at 12. But the law is clear that, "[u]ltimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (internal citations omitted). Thus, it is not the ALJ's job to collect all the relevant medical records. Put simply, "there is no indication that the ALJ felt unable to make the assessment [s]he did and [her] conclusion is supported by substantial evidence." *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). What is more, Plaintiff's counsel agreed to the ALJ's closure of the record in October 2024. *See* (Doc. 8-7 at 172).

**III. The ALJ's Step Three Finding is Supported by Substantial Evidence.**

Plaintiff argues the ALJ improperly "found that Plaintiff's impairments did not meet or medically equal the criteria of Listing 1.15" when she found that "there was no documented medical need for an assistive device involving the use of both hands." (Doc. 13 at 13).

In Step Three, the ALJ relies on objective medical evidence to determine whether a claimant satisfies regulatory criteria to be considered *per se* disabled. *See* 20 C.F.R. § 404.1520(d); *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). The purpose of the regulatory criteria is to streamline

the administrative process. *Bowen*, 482 U.S. at 153. To satisfy these criteria, a claimant has the high burden of meeting each specified criterion. *Sullivan v. Zebley*, 493 U.S. 521, 530–32 (1990). The Commissioner is responsible for determining whether this burden is met. 20 C.F.R. § 404.1527(d)(2).

Plaintiff claims the ALJ improperly evaluated the Listing 1.15 criteria because she did not "consider that Plaintiff was prescribed a walker . . . .," she did not "state how Plaintiff's uncontrolled diabetes and diabetic neuropathy affected [her,]" and Plaintiff otherwise satisfies the requirements. (Doc. 13 at 14). But the ALJ clearly considered Plaintiff's prescribed walker and her testimony that she used such walker or a cane each time she walked. (Doc. 8-3 at 23). The ALJ also observed that the medical record and evidence did not entirely support Plaintiff's testimony because some records did not indicate the need for a walker or other assistive device. *Id.* at 23–26.

**IV. The ALJ Properly Evaluated Medical Opinion Evidence.**

Plaintiff argues the ALJ failed to properly evaluate the administrative medical findings of some SAMCs by finding them unpersuasive. (Doc. 13 at 14–16). Plaintiff argues more weight should have been given to some SAMC opinions. *Id.* at 15 ("Dr. Vera's finding should be accorded greater weight . . . .").

Plaintiff's argument fails because the ALJ's findings were consistent with agency regulations and supported by substantial evidence. When "substantial evidence supports the Commissioner's decision, we may not reverse even if we might have decided the case differently." *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (internal quotations omitted). The ALJ analyzed the medical records and supported her conclusions throughout numerous pages. *See* (Doc. 8-3 at 22–31) (describing the medical record in detail, providing reasons why she found the record inconsistent, and why she found some SAMC opinions persuasive). Further, the ALJ stated

she "cannot defer or give any specific evidentiary weight" to the prior administrative medical findings and personally analyzed each medical professional's opinion. *Id.* at 28.

The ALJ provided specific reasons for her decision. And these reasons addressed the supportability of the medical opinions. *See* 20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency . . . ."); *see also* 20 C.F.R. § 404.1520c(c)(1) ("Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be.").

For example, the ALJ explained that she found the opinions of some SAMCs partially persuasive. (Doc. 8-3 at 28–29). The ALJ found their conclusions mostly consistent with the record. *Id.* at 28. But the ALJ noted they "did not benefit from first-hand knowledge and experience with the claimant condition" and did not have access to additional medical evidence at the hearing. *Id.* at 29. The ALJ explained that she found the SAMC opinions "provided no additional explanation or clarification as to how [Plaintiff's] impairments limited [her]" and, accordingly, were "broad, general, and of limited use in determining" Plaintiff's RFC. *Id.*

Plaintiff's argument is also contrary to the law. "'[T]here is no requirement that an RFC finding be supported by a specific medical opinion.'" *See Bonham*, 177 F.4th at 940–41 (quoting *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)). In fact, the Eighth Circuit has upheld an RFC determination in the absence of a "direct, 'functional' medical opinion" where the medical record was adequately developed. *Id.* (citing *Hensley*, 829 F.3d at 930–32). Considering the thousands of pages of medical records, to call the medical record in this case "adequately developed" would be an understatement. As discussed *supra*, the ALJ thoroughly analyzed the medical record and considered numerous facts in addition to medical professionals' findings. Thus,

the ALJ properly analyzed the facts and the medical professionals' opinions. *See Austin*, 52 F.4th at 729 (stating an "ALJ is free to accept some, but not all, of a medical opinion"). Thus, there is "relevant evidence" that a "reasonable mind might accept as adequate to support" the ALJ's conclusion. *See Biestek*, 587 U.S. at 102.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.

So ordered this 30th day of September 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE